at one. Good morning, Your Honor. May it please the Court. My name is Lisa Freedman. I'm here on behalf of the plaintiff appellants who are 14 children in the child welfare system in New York City. Imagine for a moment you are a seven-year-old boy and our plaintiff J.R. Your mother has just died and now two months later you are taken from your father from the only home you've known by a stranger and put into a large shelter with no one you know. Eventually you are bounced from stranger to stranger in a revolving door of foster homes. With each move you are often forced to change schools, leave behind any semblance of familiarity and routine. Even more heartbreaking, this constant change has deprived you of contact with your siblings. After at least six different placements, your grandparents, having improved their health, take you in. You happily move in with them and get reconnected to your extended family and your family's culture. However, two months in, the New York City Administration for Children's Services, ACS, denies foster parent certification to your grandmother after a background check reveals her husband has a nearly 30-year-old conviction for robbery. You have no opportunity to challenge the denial, nor do your grandparents, because under New York City law and under OCFS regulations, New York State Office of Children and Family Services regulation, the conviction mandatorily disqualifies your grandparents from serving as foster parents. So you are removed and again and again placed into stranger foster care, increasing the likelihood that you will ultimately be discharged to homelessness, will fail to graduate from high school, will suffer significant mental health issues, and even will have a shorter life. All because... I don't mean to cut you off in terms of the introduction. It's very compelling, having presided over Child Care Matters, I get that it's very compelling and it's heartbreaking. On the one hand, you have the mandatory exclusions. And they're there for a good reason, right? Because you don't want ACS placing a child in the home of someone who is qualified to be a foster parent who has, say, perhaps a prior record for child abuse or child molestation. Is the problem the regulations? Or I thought the issue here is that ACS was still leaving children in relative care where they don't qualify for foster care because of a benign, perhaps, not a mandatory restriction, but a non-mandatory where in their discretion ACS says, yeah, you have a prior conviction, 30 years, it's not a violent crime, something you did in perhaps your youthful years. And that, in our discretion, we're going to allow you to take care of your niece, nephew, grandchild, but we're not paying you what we would pay a foster parent. That's what this case is about. And so what I struggled with is, is this a policy issue where undoubtedly it's compelling. ACS should be paying for, if they place a child in foster care and they're paying foster care costs, they should do that. And there is a national policy, I thought, that relative care is the preferred, correct? Yes, absolutely correct. Does ACS, I'm not as familiar with the administrative process of ACS, but does ACS receive federal funding for their permanency plans that are approved yearly? ACS receives funding through New York State, which receives some funding for their foster care program. And it's not based on whether permanency plans are approved or not? It is based on a variety of factors. It's based on a variety of factors. So the reason for my question is, is the solution an administrative policy change in regulation or is it a legal solution? Do you see what I'm saying? So we have three classes in our lawsuit. One is based on mandatory disqualification, which is a result of both New York State law and OCFS regulation. And it is our contention that the regulation is overly broad. And so that is a very specific claim with regard to the mandatory class. And just to clarify, even with individuals, relatives who have a mandatory disqualification, ACS does routinely, and as is clear from some of our specific named plaintiffs, place children nonetheless with those families. So it is obvious that it is not a safety concern. They don't consider it a safety concern. If that happens, what's the injury? If they are placed with their kin caregivers, then how has there been a constitutional injury? So there has been effectively an arbitrary decision made that these, that even though it's recognized that when children are taken into the child welfare system, there's a trauma that they experience, as well as probably a trauma possibly from their prior experience with their original parent. They have experienced significant trauma, and there's a recognition that these children have significant needs. And in fact, as you can see from our named plaintiffs, they suffer from a range of significant disabilities. And so for the government to arbitrarily decide it's going to place them with the caretakers, sorry, with family. I just want to clarify your experiences. So the injury is the trauma from the process? No. The injury, sorry, if I misspoke. The injury is that when you take those children and then deprive them the supports and services that everyone recognizes they require. So it's a benefit that the kin caregivers are not getting in the discretionary placement? They're not getting the supports and services of the foster care system when they're placed with the family members. And they're also deprived pathways to permanency. KinGAP, which is a subsidized guardianship program that's only available to relatives who have been certified as foster parents, as well as adoption because the same criteria are relied on. Right. So just to be more specific, I mean, your theory is that the plaintiffs say that they are entitled to a kin adoption or a kin foster parent, right? And they're in a position to get one because a lot of your plaintiffs are living with a relative who wants to adopt or be a foster parent, right? Well, if I may, our contention is that there should be a process that allows for fair consideration. The district court thought about this as a standing case, so I just want to think that through, right? Yes. Okay. So you are saying you're entitled to that. You want to be able to get a kin adoption or a kin foster parent, and you're in a position to get it. And the thing that's in the way is that New York State has a policy or a law that says that these relatives are disqualified, and so that prevents it from happening. And if we said that that was invalid, then you'd be able to get it, right? So that's with regard to the mandatorily disqualified class, yes. Right. With regard to the... Well, the two discretionary disqualification classes are being... The process that's at issue there is that the guidance that's issued by OCFS as well as the practices of ACS and the monitoring by OCFS are deficient. So whether it's a law or it's a policy or practice, that's what's preventing it. Okay. Yes. So this was meant to be a friendly question. So that is an injury that's causation and that's redressability. Yes, exactly. Right? Yes. And so the district court, instead of thinking about the injury in fact, just said, well, you're not legally entitled to this because the rights protected by the due process clause only extend to keeping families intact, but not putting burdens on that by denying benefits or so on. And that is... That's the merits question, right? Yes, exactly. You're right. And so it might be that once we get to the merits, that might be the answer, right? It might be that the due process clause doesn't give you this entitlement to a kid adoption or a foster parent, but that is a merits question. So I'm with you there. I guess my question is, so if I think the district court was doing a merits analysis and misconceived of it as a standing analysis, if we agree with the district court about the scope of the rights under the due process clause, it might be that you still lose on the merits, right? So I guess my question is, why shouldn't we consider it a merits analysis and decide whether you have stated a claim? Well, because at this point, the merits analysis has not been addressed by the district court. So it would be our position that the district court should have that opportunity. What I'm suggesting is, when the district court says, okay, the due process clause only protects a right to family integrity insofar as it keeps an existing family unit together, it doesn't allow the state to come in for fear, but doesn't extend to giving the benefits that are associated with it. If that were correct, it would mean that you failed to state a claim, right? If that were correct. I mean, it is our contention that that is not correct and that, in fact, some of the aspects of the judge's decision below include this idea that, for instance, there's an intervening causation of the kin, or that there has to be an intentional interference with the relationship, which I believe is not correct. So maybe the argument is that the reason why we shouldn't just regard it as a merits analysis is because the district court's conceiving of it as standing kind of distorted the way the arguments would work, right? Yes, exactly. So I take it, you know, there's this theory of family association integrity, right? The district court, so one position might be that it only protects everybody being together, but maybe doesn't extend to subsidies, but your argument would be that if you put a burden on family association by denying subsidies to the relative and granting it to a non-relative, then it might undermine the right to family association, right? Exactly. And the district court didn't really consider that because it kind of took for granted the scope of the family association, right? And they just did a causation analysis based on that assumption, right? Right, exactly. Essentially, the district court confused, I think, you know, it held us to a, it confused both the standing analysis with the merits analysis. And at the end of the day, it didn't fully consider our position on the merits analysis. Right, so even though the state and the city are saying, well, you can understand these arguments to be merits questions and affirm on that ground, you're saying that the mistake about standing distorted the merits analysis, so you would make different arguments or you'd have, be able to have a hearing on what the merits questions are that you didn't get the first time around if you were to do that? Yes, I think that we did not, that I think because of the way that the district court framed the decision, it ignored important aspects that would go to the 12B6 motion. But the motion to dismiss was both 12B1 and 12B6, right? Yes, it was. And so the district whether we would vacate and remand or decide on the merits. Okay. Yes. All right, thank you. We'll reserve a few minutes for rebuttal. Yes, thank you. We'll hear first from the May it please the court. My name is Jameson Davies for the city of New York. This court should affirm the district court's decision granting defendant's motion to dismiss because the plaintiff's lack standing or alternatively because they feel the state of claim on which relief can be granted. I can ask you this question about standing, right? So the plaintiffs say that they want a kid adoption or a kid foster parent and they're in a position to get one because they have allegations they live with a relative who has applied and been So we do know that the state and city policies are what has denied the certification. And if we said that the state and city had to adopt a different policy, it would remove that barrier, right? So why isn't that injury causation and redressability? I think in these in cases where there is sort of these kind of policy based cases where it's a substantivity process, right, which is sort of vague, there's an overlap between kind of what constitutes a cognizable injury in fact under the substantive process clause and the merits of the claim. So I think here district court is saying... Yeah, but right, but you don't deny that there is some, I mean everybody seems to agree that there's such a thing as a right to family association, right? I mean you're contesting the scope of it, right? Yeah, I think that's right. Okay, so the right is cognizable, like there is an interest that's being protected and the dispute is whether it entitles them to this thing that they want, right? And I think, yes, and whether there's a cognizable injury to that, right. Right, so it's not the kind of injury that wouldn't even be recognized as an injury, right? The question is whether their legal theory is valid or not valid, right? I think, especially as to that claim, for that, you know, there's a lot of different categories of plaintiffs. I think that is the one where the analysis kind of overlaps the most between injury. And this court has recognized that that happens in these kinds of cases. We cite Jusino where this court converted an erroneous subject matter dismissal to a dismissal. No, I mean, so there's, as you just said, there's a dispute over the scope of the right to family association, right? And we've said that, you know, when you do the standing analysis, you assume not just the truth of the alleged facts, but also the success of the legal theory, right? So if we're deciding whether they're going to get, they have injury causation and addressability, we assume that they're right, they're entitled to the thing that they're being denied, or that they should be protected from the harm. And then we move on to consider the merits, right? But the district court seems to say at the outset, you don't have a legal right to this, and therefore I'm not going to give you standing. But the question of whether they have a legal right to it, that is a merits question. Yes. Well, I think it's, the district court framed it as whether or not there is injury in fact to their, to the right as it's been defined. Right, but I'm saying it has confused whether you have a legal right to the thing you're saying with whether you have a concrete injury in fact, right? So you don't deny that these plaintiffs, they want something from the state that the state is not willing to give them, right? Yeah, I think that's right, yes. Right, so that is an injury in fact. It's a case of controversy between them and the state. Let me go back a little bit, because I think it's a little bit that these plaintiffs want something that the people who are actually seeking the benefits are not these plaintiffs. The people who are seeking these benefits are the potential foster parents who are not plaintiffs here. Well, that's a different argument. I kind of, oh, I guess the district court addressed that under the heading of prudential standing. Correct, correct. I don't know if that's the right term for it, but maybe it's a kind of third-party standing question. But that was not really the thrust of what the district court was relying on. Yeah. Is there an alternative basis that actually the kids themselves don't have any rights, that it is all about the rights of the parent? I think that goes into the, that factors into the analysis. They don't have any rights to the specific payments that they're alleging have been denied here, the right to the payments. Well, the payments don't go into their pockets, right? But if the allegation is by having discriminatory policies that treat relatives different from non-relatives, you're putting a burden on family association, and therefore inhibiting their ability to be placed with a relative, that might be a right that belongs to the kids, right? I think even if we assume that that's right, it's been fully briefed at this point, and I think it's... Yes, and that's my question. Okay, so if I think that the district court wasn't right to think of it as standing, can I regard the arguments the district court made as merits arguments? I think that's right. I think this point... I know that you say that, right? So I'm not surprised that you suggest that. But I guess my question is this, you know, it doesn't, it seems like there is a dispute over the scope of the right to family association. On the one side, there's the argument that really the due process clause only protects the right to maintain an existing family relationship and you violate the right only when the government removes somebody from that association. And the idea that forming a new association or maybe putting a burden on it by not giving it as many subsidies as a different association gets wouldn't violate the right, right? That's basically one side. The other side says, well, that kind of a burden would violate the right, right? The scope of the right and then deciding whether there's causation and so on. So why shouldn't I say, well, the error of viewing this as a saving question just kind of infected the way the district court evaluated the arguments on the merits and I need to see a merits analysis. Well, I think, I think the reason is that their merits analysis has been fully briefed both here and in the district court. I think as to the scope of the right to family association specifically, this court's been very clear in Gorman that to state that kind of claim, you have to allege a specific intent by the state to interfere with the family relationship. There's, you know, that's binding law that's never really been addressed by the plaintiffs. So I don't think there is really the room for the dispute that you're talking about where the scope of the right is unclear. I think the scope of the right as this court. Okay, so you're saying that even though the district court didn't address that argument, it is clear in the record, like we can conclude from the record, that there's no way you could conclude that the state had a specific intent to interfere with the family relationship. Correct. That's not alleged anywhere in the complaints. You'd look just to the, you know, the four corners of the complaint. Why could we conclude that, right? So if in fact there is a child who's placed with a relative and the state denies the certification for foster parentage or adoption, why isn't it a plausible inference that they are preventing, like, you know, they're favoring another relationship over their relationship? I think it's because this court and the Supreme Court have been very careful to read the substantive due process clause narrowly and find that you have very limited rights under the substantive due process clause. It's really aimed at protecting specific intentional government invasions into fundamental liberties. And that's just, you know, the idea that it gives you a right to payments sufficient to maintain family relationships is just not within the scope of anything this court or any other court has recognized as part of the substantive due process clause. But that's a different question about that specific intent, right? So, like, if in fact there were some smoking gun document from the head of Child Protective Services that said the reason we're going to enforce the mandatory disqualification is because we really don't like the kid placed with this relative, that there would be a specific intent, even though the action would just be about denying the subsidy, right? I think that's right. Yeah. So your argument is not that it doesn't reach the subsidy. It's that there isn't any plausible allegations of a specific intent to interfere with their relationship. Correct. And then the scope of what constitutes interference with the family relationship has been construed very narrowly. They're not alleging that they can't see their family. Most of them are, in fact, living with their family members. They're just alleging that they're not subsidized to live with their family members and they're not given an additional benefit. Most of them are already living with their family. Does that make it better or worse, right? So, like, I think everybody would acknowledge that there must be some limitation on a right to be placed with a family member if the family member is a danger to the child. But the fact that they are placed there seemingly indefinitely suggests that the state doesn't believe that they're a danger to the child and yet is denying them the status of a foster parent or an adoptive parent. I wanted to make sure I hit that point because the entity that is placing the child is the family court, not ACS. So, ACS has not independently made a determination. If it's a direct placement with a kid, it's the family court's determination that that placement is in the best interest. Based on an ACS recommendation. Because if ACS said it's a danger to put the child in that placement, that wouldn't happen because the court is focused on the best interest of the child. In most circumstances, that's right. I mean, in family court, there's an attorney for the child who also gets a lot of weight, I think, from the family court and often does, in my experience, take different positions from ACS. But it's just a different system. It's a different set of regulations and it's a totally different process. So, the fact that there has been a determination that kinship care is in the best interest of the child under the Family Court Act doesn't necessarily mean that the regulations giving affirmative subsidies are satisfied. If I could just make one point that didn't come up. I'm sorry, but does ACS think that all these kids are being put in a dangerous situation and the family courts are just routinely putting kids in peril? No, well, I don't think that's right. I mean, I don't think they think that. It depends a little bit on which class you're referring to. So, in the mandatory class disqualification subclass, ACS doesn't have any role in it. It's a mandatory disqualification. For the discretionary subclasses, they do an independent evaluation of whether or not the household. Who's they? ACS does that when they're determining whether to disqualify someone for a discretionary reason. But there's also a whole different timeline, as well, because family court proceedings happen quickly on a sort of expedited basis. ACS's studies of whether or not it's an appropriate placement, whether or not there should be a discretionary disqualification, go on over a longer time, as well. So it's not necessarily a one-to-one correlation. And I just want to make the point, also, as to the SCR subclass, regardless of what you think about that, all of the claims in that subclass are moot because the- You say it's moot because the state is no longer relying, or the city is no longer relying on those reports. Not only no longer relying, but legally cannot rely on them after the change in the law. And it's automatic by operation of law. Okay, you also make the argument that actually all the claims based on the mandatory disqualification, there's no standing for a separate reason, which is that it's required by federal law. But it's not actually required by federal law, right? Federal law provides a financial incentive to adopt that rule, but the state is not compelled to adopt it. The state isn't compelled to adopt the rule, but I think to get the payments that they're asking for, which is the relief they're looking for, that is- The source of those payments, ultimately, is federal subsidies that require- Yeah, but the way that that works is that the federal government gives money to the state, and the state, pursuant to its own obligation under its own statutes, provides the funding. Maybe as a practical matter, the state would stop doing that if it didn't get the federal subsidy, but the way we would read the statutes is that there is an obligation under the state law to provide the funding, right? But the statutes don't say, as long as there is funding that comes in from the federal government, we will provide the subsidy to the foster parents. I think they don't say that specifically. Some of the statutes that deal with the calculation of funding recognize that some of the funding comes from federal law, and if the federal law were to be reduced, the ultimate payments would also be reduced, and social services law- Doesn't the federal law require, as a condition of funding state protective services, require permanency plans for each child that they are to be reviewed once a year once a child is in the custody of ACS?  And when a child is in the custody of ACS, is placed in foster care, it is always in the custody of ACS, correct? Correct. If they're in foster care, that is correct. Most of those plaintiffs here are actually not in ACS's custody because they're not in foster care. Okay. Most of the plaintiffs here are directly placed with their relatives, which means they're not in ACS custody. But in terms of adopting a permanency plan, do these plaintiffs have a permanency plan? I'm not- I don't think that's in the record. You know, we're at a motion to dismiss, so it'll be six.  Because usually there's a permanency plan. It's approved once a year, and if it's not approved within the year, the federal government cuts off funding, is my understanding, unless New York is very different. Yes, I think that's right, and I didn't want to speak to facts that aren't in the record. I'm sure that all these plaintiffs- Well, it's regulatory. It's assuming- It's regulatory. It's not a- Yes. I would assume that all the plaintiffs who are in ACS custody have permanency plans. I just don't want to speak to something that's not in the record. And those permanency plans have to be approved by the court in terms of, is this the best placement in the best interest of the child, considering what's happened over the previous year, correct? Correct. And there's a report from ACS making a recommendation and asking the court to, in essence, bless or approve this permanency plan. And if it's not done within a year, the federal government can cut off funding. I believe that's correct. That's my understanding. Okay. Thank you. Thank you, counsel. Thank you, my colleague. From Mr. Levitz. Thank you, Your Honors. Philip Levitz for the state defendants. Plaintiff's complaint was properly dismissed against the state defendants, both for the reasons my colleague was just discussing and for the independent reason that the state defendants are not proper defendants. I'll start with the reasons the state defendants aren't proper defendants, and then I'd like to talk about a fundamental defect in plaintiff's claims against all the defendants. And that's basically that all plaintiff's claims assume a constitutional right to foster care benefits that they simply don't have. So first let me talk about the state defendants specifically. So I just want to start with that, right? So I think that that's right, that the claims assume a constitutional right. But when we're talking about standing, don't we assume the viability of the legal theory to determine whether there's injury causation or irreversibility? And that's a merits question, whether they have the legal entitlement to the thing they're seeking. Well, you know, first of all, I want to say very clearly that the problem that I'm talking about, we think is a standing problem, but is also, at a bare minimum, a merits problem. We think it's a standing problem also because basically the reasons the district court was getting at, that you need a cognizable constitutional injury. And injury to your family association is cognizable, right? Yes. So your dispute is not that it's not the kind of injury that would be recognized as an injury at law. Your argument is that the actual right just doesn't give them an entitlement to the particular thing they're seeking. That is central to what we're arguing, yes. So there is a concrete and particularized injury. I mean, these are kids in a placement. They have relatives who have applied and been denied foster parentage and so on, right? We don't think that's necessarily true, but let me talk about it from the sort of – You don't think that's true? Yeah, that's important. I mean, from the perspective that the district court looked at this, which we think is a perfectly reasonable perspective, you have these people who, for the most part, were directly placed with their family members. I mean, they're with the family that they want to be with, so there's no injury. For the most part? So I thought of the two groups. The kin placements are with the family members with whom they sought to be, and it took some time and there was some process involved, but they are now there.  And then the stranger placed plaintiffs, I thought the issue there was that the kin caregivers refused. Exactly. That's exactly right, Your Honor. So what would be the injury in that case? There isn't an injury caused by the defendants. That's the point. The point is you're right. Why not? I mean, why isn't it at least plausible when we're dealing with a motion to dismiss that maybe if there wasn't financial pressure on them and they got the subsidies that other people would get for taking care of these kids that they would not have refused? Because there's no specific allegation in the complaint that that's actually the cause. There's no allegation in the complaint that – Don't we make inferences in favor of the complaint? If you look at the JS case – I mean, the whole case is about the financial pressure that's being put on the kin relationships. Okay, but if you're looking at – I mean, isn't it at least plausible that by denying the funding to the kin relationship that you would give to anyone else who's taking care of the kid, that maybe that that might be a cause of why it's not a stable relationship? If you look at the JS case, we said you don't draw these sorts of inferences on a 12B1. But in any event, I just want to talk more generally about the merits side. I don't think it should be a 12B1. Okay, well – But you do – actually, let's go back to that. I mean, you do actually, right? I mean, we're misunderstanding at every stage of the proceeding. So when we're dealing with a motion to dismiss, we decide whether there's injury causation and redressability based on the allegations of the complaint. Right, okay. At summary judgment, if it turns out that there isn't, we can revisit it, and we can even revisit it at trial. So why isn't it the case that we would make that inquiry? Well, let me focus on what I initially wanted to focus on in response to that, which is specifically about the state defendants. There absolutely is no allegation of the sort of injury causation and redressability with respect to the state defendants because there are no allegations in what we're talking about that it's actually the state that is the cause of the injury here or that the state could do anything to redress the sorts of injuries. But there's indirect causation, and I believe with respect to J.R., who was originally placed with grandmother and her husband who had a prior conviction, the child, the grandmother, could not financially provide for him or provide him with health insurance, and that is why the child was then placed in stranger care, not because they didn't want to because of behavioral issues, but because the family could not afford. At least that's how I read the complaint. Is that correct? Well, again- I mean, I know there are a lot of initials, but at least J.R., placed with paternal grandmother and her husband, was then moved, is currently in stranger foster care because the grandmother couldn't financially afford to keep him, not because they didn't want to keep him, but they couldn't financially afford to keep the child. J.R. I mean, again, there's no actual allegation that the cause- I mean, people might have financial strains for all sorts of reasons. There's no specific allegation that the cause was ultimately the foster care issue. But in any event, that has nothing to do with the state because the state isn't the one that makes these determinations. The city ACS makes these determinations. But the whole case is about the fact that these direct placement relatives who cannot qualify to be foster parents, they're allowed to do it, but they have to do it at their own cost because if they could qualify to be foster parents, they would have these financial supports. Isn't that what this case is about? Well, again, if you want to assume injury, there's still the same fundamental problem that we have to go back to with viewing it through the lens of 12b-6, and I want to talk a little bit about that. But I just want to get to this idea about the state, right? I mean, the ACS is operating pursuant to state statutes, right? So state statutes constrain when they can approve a placement, right? To some degree. To some degree. There certainly are state statutes, but- And usually if there's a claim that a statute is unconstitutional, facially or as applied, you name as the defendants the state officials responsible with enforcing those statutes, right? Well, as Your Honor said in the Tangrede case, which is cited here, you need to have something that the actual defendant who's named did or could do to redress that caused the injury and that could redress the injury. And there's nothing alleged here that the OCFS commissioner could do to redress the determinations that they're complaining about. That's something that ACS handles under state law. I mean, do the state defendants have a responsibility for ensuring that the local child services departments are following the state statutes? They don't have any enforcement role in monitoring? They don't have a role to, like, make some sort of second-line review of what ACS is doing. Under the state scheme, it's ACS that does that. But even if- Let me ask you this question. So let's say the statute were unconstitutional, just assumed for the purposes of my hypothetical. It's unconstitutional. It violates the due process clause, right? So who's responsible for recognizing that and not enforcing it? In this case, it would be the entity that actually applies these decisions about who should be in foster care or who should get approved for foster care is ACS. It's not OCFS. So if the statute is unconstitutional, you think ACS should just stop applying it? Well, I mean- But then in that case, like, ACS would say, well, we don't have any discretion because it's a state statute until the state tells us- Well, but there's nothing that unusual about, you know, like a local official being an appropriate defendant for a challenge to a state law. I mean, if you think- I mean, I've had cases in the Second Amendment context where it's the, you know, city police that handle licensing determinations. So they're the proper defendants. In any event, I- So just to be clear, so it's a state statute and the only entities that it constrains are the local child services departments? With respect to making foster care determinations? Yes, that's correct. So the state defendants have no role in any of these determinations or in telling the localities that they need to comply with this? Well, they have a generalized oversight role. But what this court has said in the Giuliani- So if they have a generalized oversight role, then wouldn't they be an appropriate person to say you should tell- No, and I'll- The entity subject to your oversight that this is not constitutional? No, and I'll explain why. That's- we look to the Reynolds v. Giuliani case that we cited here, which is the precedent on this. A constitutional claim for an oversight failing lies only in very limited circumstances. There's got to be deliberate indifference reflecting a purposeful rather than negligent course of action by the oversight agency here, that would be OCFS, that caused the alleged deprivations of plaintiff's constitutional rights. Here, plaintiffs allege no facts that could plausibly show such deliberate indifference by the state reflecting a purposeful oversight failing, or any causal relationship between any oversight failing and the foster care determinations that the plaintiffs challenged. So plaintiffs have not alleged any cognizable constitutional injury caused by the state defendants. But if I could go back to the more general point about there not being a constitutional claim here at all for a moment, I just want to underscore something that I think your honors were getting at a little bit and my colleague was getting at a little bit, but it's extremely important. What the plaintiffs are trying to do here is expand a substantive due process-based claim well beyond any case that anybody has found or cited. And this is a family integrity-based claim that is nothing like any case that's been cited because it's not about removal. It's about removal of children from family. It's about removal of benefits. It's about the absence of benefits. And that's simply not a claim that the Supreme Court has ever recognized or this Court has ever recognized. And I want to underscore that there's... I think it would be like... Troy is right that it would be a kind of extension of prior precedents. There's a logic to it, but isn't the argument you're making right now, that's a merits argument, right? It's a merits argument. It's also an issue of cognizable constitutional injury. But even if you want to view it as a merits argument... If you just acknowledge to me that, like, it follows the same logic but it would be an extension, so it is about the edges of the scope of the right, that does seem like something to be decided on. Okay, well, there's a separate... It doesn't deny somebody the ability to walk into court to make the argument, right? Fine. So there's separate injury issues that we talked about, but if you want to look at this as a 12 v. 6 merits issue, fine. Let me just spell out what I want to say specifically about that. Well, I know what you want to say, but it's what our questions are, and so I have... Your interest should be in answering our questions. Absolutely. And I understand your argument that there is no constitutional violation here, your merits argument. I understand that. We've dealt with standing, we've dealt with merits. But I have a question. Some states have funds that are set aside for precisely this type of situation because the goal of the best interest of the child is often in relative placement, as some of the allegations in this case, some children's behavior, their grades, have improved tremendously because they're placed in relative care. Some states that receive federal funding and for purposes of approval of a permanency plan will set aside funds that can help families in precisely this situation. That appears not to be the case in New York. Now, I get that that may not be a constitutional violation. It may be a policy issue, which is why I asked your opponents about that. Right. But it seems to me that one way to solve this would be family judges not approving a permanency plan if the permanency plan says place the child with the relative but don't provide any supports because that can put the risk of funding for the department as a whole. But that's another issue. What I don't understand is when a state gets a substantial amount of funding for placement of children, and if they're placed properly, it can affect a whole host of things. They'll not come before this court, perhaps. Why money isn't set aside? You're saying they're trying to create a constitutional claim when there exists one. But it seems to me the state is trying to save money by putting children with relatives but yet not providing any support when they would otherwise have to pay substantial sums of money if it was a stranger foster care or somebody certified as a foster parent. Correct? I don't think that's quite right for a couple of reasons. The state does not pay foster parents for taking care of children, whether they're a relative or a stranger? The state certainly pays the foster parents. That comes largely from these federal funds that would be at risk. But also I want to make clear that even for the directly placed individuals here, children here, there are certainly funds and supports that are available from the state for them. In fact, it's required under this scheme here that the children and their caregivers be provided information about what services are available when they're put into the directly placed situation. So they could be eligible for Medicaid, they could be eligible for temporary assistance, which is a New York-specific financial support program for needy families. But not ACS funding. Those are separate programs New York may have. I'm talking about ACS funding. So, for example, in some states, foster relatives who adopt can get subsidies for adopting, like an agreement that education at the state level will be paid. But those benefits come directly from ACS, or the equivalent in another state. You're saying that exists here? I'm not aware of something specifically like that, but I'm saying there are other funding sources from the state that are available. And just to get to Your Honor's point about this being a policy question, I think you're exactly right about that. And it's a difficult policy question. What the Court has said about substantive due process is it implicates often these sorts of difficult policy questions. And you shouldn't sort of constitutionalize all these sorts of policy questions because they're difficult questions for legislatures to make, not for courts to constitutionalize. They're difficult questions about who should be, whether somebody with a particular criminal record or child abuse history should be entitled to service. I get this argument. It's quite plausible that maybe the way it should be resolved is actually the due process right to the family association should be confined to the scope that's been recognized in prior cases or whatever. I guess my concern is, did the District Court really consider those arguments and say that that is definitely the scope of the due process right and it should not be applied the way the plaintiffs argue? I mean, did the District Court take it for granted and do a standing analysis and not really engage with this question? Yeah, I mean, the District Court certainly viewed it through the lens of standing, although the merits issue was also briefed. It was also briefed in this Court, and this Court's review is de novo. So there's no reason to think that there's a need to go back to the District Court because there's no further fact-finding to do. This is a purely legal question that this Court can decide in the first instance. You know, I think there's no reason that that issue would have to be sent back to the District Court. Thank you, counsel. Thank you, Your Honor. We'll hear from Rucola. Thank you, Your Honor. Ms. Freeman, I'm sorry to jump right in here. Go ahead. I'm hoping you can clarify the standing kind of question here. It's not that it's not... My understanding is it's not so much the placements because on the kin side, they've been placed with kin, and on the stranger side, it's the refusal of the kin that has led to that placement, but it's the benefits, the bundle of benefits that come that they're not getting that is the alleged injury for standing purposes. Am I getting that right? The loss of that benefit does make it harder. It's impeded the, you know, right to family association, or that's the theory. That's correct. That the refusal to provide them with the benefits that they need in order to function effectively undermines the stability of their placement with the kin, puts them, you know, deprives them of path to permanency, and effectively, you know, leads to their deterioration. I mean, these are children with, you know, dramatic needs. Go ahead. I'm sorry. What's the response to the argument that the benefits are the rights of the caregivers, the adults, who are not parties here, and for the kids, what's their injury? So the benefits are not for the adults. The benefits are for the purpose of the children. There's no reimbursement to foster parents for being a foster parent. There is only money that statutorily is defined as for the purpose of the child. So it is not, there's no reason that this should only be brought, this is the kind of claim that could only be brought by the children's kin, because the children are the intended beneficiaries of those, of any supports and services. They're for the child themselves. Okay. That's helpful. You haven't run out of time. I just wanted a question of clarification. When, what is, your opponent said, even the children that are in direct placement with relatives are not in ACS custody. They have to have come into ACS custody to be in a position to either be placed in foster, stranger foster care, or kin placement that are not qualified as foster but are functioning in that role. So there had to have been some either hold of the child or taken custody of the child. Is that correct? Yes. Each of these children were taken. Go ahead. I'm sorry. So I'm trying to understand. If it's direct placement, still ACS has a file open and that child is still in the custody of ACS. ACS not only has a file open, they are obligated to report to the court for the permanency hearings that you've mentioned. They're obligated to continue to supervise the home to ensure that the child's needs are, sorry, to plan with the child for permanency. They have a whole host of responsibilities that we've laid out in our briefing. Well, again, I mean, there's arguments on this question and maybe that should be decided on the merits, right? I mean, they're not literally in state custody. I mean, direct placement is not a kind of agent of the state the way maybe a foster parent is. So you might say they're not in state custody, but your argument is, well, there is a special relationship between the state and the child because they took them out of their biological parents' home and that entails the same obligations that have been recognized, right? That's correct. And a lot of the language. You sort of concluded that actually that right is limited to just being in state custody. Do you think that you didn't have an opportunity to raise the argument that it should be broader than that? To the extent that the district court found that, I think that decision is in error. The language about custody is because this has often come up in the context of prisoners who are in the state, in the custody of the state. But I believe the law supports the notion that it is the deprivation of the child's liberty that is at issue, right? So essentially you've removed a child who is dependent by their very nature from their own family. The state is the one that has done that, and the state has now taken on the obligation, or when I say the state, ACS, has taken on the obligation to care for that child. That comes along with other obligations. Can I ask about this question about the intent to interfere with the family relationship? Yes. So there is language in Gorman that suggests that that's required, but I think that that language is actually not applicable here or shouldn't be applicable here because, first of all, there was no government action at issue there, right? That was an individual correction officer who took it upon himself to look at a state database. That's a state action, right? That's the idea. Well, but it's not a state policy or practice that's at issue, and that's what we're dealing with here. And, in fact, in Moore, there was certainly no intent to disrupt the family, right? The purpose of the ordinance in Moore v. City of East Cleveland was about traffic control, purportedly. So I don't believe that if it were a requirement, that you haven't really shown that the state has the intent to interfere with the family relationship. I mean, it does seem like the overall scheme still favors relatives, right? So the relatives are notified first about the child being removed, and they have the opportunity to apply to be a foster parent, right, before other possible caregivers. Yes. And so the problem that you identify is in the certification process, and that is the state's attempting to balance the interest in safety against the preference for relatives. Except that their practice. They get the balance wrong. Well, their practice is mixed. The purpose of it is to interfere with the family relationship, right? I think the purpose of it is to interfere with the family relationship for two reasons, or it depends on the class, right? For the mandatory disqualifiers, clearly the intent there is to disrupt that relationship. The law mandates that decision-making. Well, that's not specific. I mean, I understand that that would be an effect of it. But the reason is, I mean, you don't deny that even if there's a relative, if the relative is a threat to the child, it's appropriate not to place the child with that relative, right? Correct. Correct. We are not asking. The argument is not that if the conviction were very recent and the person is very violent, they shouldn't be placed there. Correct. The argument is just that they, by having the mandatory disqualification and a look-back period of a long period of time, they're getting the balance wrong, right? Yes. But the idea that there needs to be a balance, you don't really dispute. No, what we are asking for are reasonable processes. We're asking for processes that make an individualized determination, which, in fact, was the law in New York State until the Adam Walsh Act was passed. That was the practice and the law in New York State. Each caregiver and, in fact, each potential caregiver got an individualized determination. So can I ask you about the state defendants? So if, in fact, the state defendants don't play a role in the placements or even in enforcing the law, couldn't you get all the relief that you're seeking with the city defendants as named defendants? Because if, in fact, there's a determination in the law or unconstitutional, it would mean that the ACS would not be allowed to comply with it, right? And then you'd get the relief you're seeking. So my question is what's the difference between the two things? I guess one is do the state defendants have a role in causing harm to your clients? And two, what's at stake with the state defendants being the case or not? So we absolutely believe that the state defendants have a role and that they both enforce the state law and they have issued their own regulation that defines the specific crimes that fall within the mandatory disqualification. So it's not actually in the law which specific crimes mandate disqualification, and that's OCFS's own decision making. In addition, they are the ones that provide defective guidance for the discretionary decision making. On the criminal, with regard to criminal history, they don't. That's sort of the oversight role that we were talking about a moment ago. It's not really like that directly affects your clients. It indirectly does it. But if, in fact, it were the case that the city defendants were not allowed to comply with the regulations they had issued because of some constitutional interest, you wouldn't need to also name as defendants the people who wrote the regulations, right? I mean, I suppose the scope of the relief could be defined in a way that might not touch on the state defendants, but it would be difficult for me to envision that since they are responsible for the policies and procedures with regard to all of these decisions. So it seems like it would be difficult to say essentially we give you relief but we're not going to touch on the regulations that control these decisions. Thank you, counsel. Thank you all. We'll take the case under advisement.